UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

Gina Finley,                              )    Civil Action No.: 4:22-cv-01098-TER
                                          )
                    Plaintiff,            )
                                          )
          -vs-                            )
                                          )              ORDER
Kilolo Kijakazi,                          )
Acting Commissioner of Social Security,   )
                                          )
                    Defendant.            )
_____ )

        This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42

U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social

Security, denying Plaintiff's claim for disability insurance benefits(DIB). The only issues before the

Court are whether the findings of fact are supported by substantial evidence and whether proper legal

standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C.

§ 636(c) and Fed. R. Civ. Proc. R. 73.

## I. RELEVANT BACKGROUND

### A.    Procedural History

        Plaintiff filed an application for DIB on August 20, 2018, alleging inability to work since May

12, 2017. (Tr. 15). Her claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed

a request for a hearing.  A hearing was held in July 2021 at which time Plaintiff and a vocational expert

(VE) testified.  The Administrative Law Judge (ALJ) issued an unfavorable decision on August 11,

2021, finding that Plaintiff was not disabled within the meaning of the Act.  (Tr. 15-32).  Plaintiff filed

a request for review of the ALJ's decision, which the Appeals Council denied on March 4, 2022,

making the ALJ's decision the Commissioner's final decision.  (Tr.1-3).  Plaintiff filed an action in this

court in April 2022. (ECF No. 1).

**B.    Plaintiff's Background**

Plaintiff was born in March 1963 and was fifty-four years old on the alleged onset date. (Tr. 65). Plaintiff had past relevant work experience as a secretary, payroll clerk, accounts payable clerk, accounts receivable clerk, and counter clerk. (Tr. 32).  Plaintiff alleges disability originally due to bulging disc, knee issues, sciatic nerve on right side, thyroid issues, arthritis, and depression. (Tr. 66). Pertinent medical records will be discussed under the relevant issue headings.

**C.    The ALJ's Decision**

In the decision of August 11, 2021, the ALJ made the following findings of fact and conclusions of law (Tr. 15-32):

1.    The claimant last met the insured status requirements of the Social Security Act on March 31, 2019.

2.    The claimant did not engage in substantial gainful activity during the period from her alleged onset date of May 12, 2017 through her date last insured of March 31, 2019 (20 CFR 404.1571 *et seq.*).

3.    Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the lumbar spine and obesity (20 CFR 404.1520(c)).

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except stand and walk for 6 of 8 hours and sit for 6 of 8 hours during the workday with normal breaks; never climb ladders, ropes, or scaffolds; and occasionally climb ramps or stairs, stoop, crouch, kneel, or crawl.

6.    Through the date last insured, the claimant was capable of performing past

relevant work as a Secretary (DOT 201.362-010, SVP 6, skilled, sedentary, light as performed); Payroll Clerk (DOT 215.382-014, SVP 4, semi-skilled, sedentary, light as performed); Accounts Payable Clerk/Accounts Receivable Clerk (DOT 216.482-010, SVP 5, skilled, sedentary, light as performed); and Counter Clerk (DOT 279.357-062, SVP 5, skilled, light). This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.    The claimant was not under a disability, as defined in the Social Security Act, at any time from May 12, 2017, the alleged onset date, through March 31, 2019, the date last insured (20 CFR 404.1520(f)).

## II. DISCUSSION

Plaintiff argues the ALJ erred in evaluating Dr. Cordas' opinions. Plaintiff argues the RFC should have accounted for mild limitations in concentration, persistence, and pace found at an earlier Step. Plaintiff argues Commissioner Berryhill lacked the authority under the FVRA to continue acting as Commissioner and could not have appropriately appointed Plaintiff's ALJ.

The Commissioner argues that the ALJ's decision is supported by substantial evidence. Defendant argues that Commissioner Berryhill was validly serving as Acting Commissioner when she ratified and approved the appointment of the ALJ who decided Plaintiff's disability.

## A.    LEGAL FRAMEWORK

### 1.    The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

4

burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy.  To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW.  *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002).  If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work.  *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g).  The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case.  *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*,

402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

## B.    ANALYSIS

### Dr. Cordas

Plaintiff argues the ALJ's evaluation of Dr. Cordas' opinions was improper and not supported by substantial evidence. (ECF No. 19 at 12-18).

For applications filed on or after March 27, 2017, such as this action, the regulatory framework for considering and articulating the value of medical opinions has been changed. *See* 20 C.F.R. § 404.1520c; *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (revisions to medical evidence rules dated Jan. 18, 2017, and effective for claims filed after Mar. 27, 2017). Importantly, the new regulations no longer require any special significance be given to opinions by a treating physician. *See* 20 C.F.R. § 404.1527 (noting that the treating physician rule only applies to claims filed before March 27, 2017). The ALJ is not required to defer to or give any specific weight to medical opinions. 20 C.F.R. § 404.1520c(a). Instead, the ALJ should consider and articulate in the decision how persuasive each medical opinion is based upon the factors of: (1) supportability; (2) consistency; (3) relationship

with the claimant(length, frequency, purpose, extent, and examining); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(b), (c). Supportability and consistency are the most important of the factors for consideration, and the ALJ is required to explain how he considered the supportability and consistency factors in evaluating opinion evidence. 20 C.F.R. § 404.1520c(a), (b)(2). An ALJ is not required to explain how the remaining factors were considered. 20 C.F.R. § 404.1520c(b)(2). In evaluating the supportability of an opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). In evaluating the consistency of an opinion, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

Dr. Cordas, an independent medical examiner hired by Plaintiff's attorney, examined Plaintiff in June 2019 after the DLI of March 2019. (Tr. 670). Dr. Cordas reviewed 2017 family medicine records near in time to Plaintiff's work injury in March 2017 and reviewed March-July 2017 records from urgent care. (Tr. 670). Dr. Cordas reviewed the July 2017 lumbar MRI with some moderate and some mild findings. (Tr. 672). Plaintiff had mild spinal canal narrowing, mild right foraminal stenosis, grade 1 anterolisthesis of L4/L5, and moderate facet hypertrophy. (Tr. 672). Dr. Cordas reviewed records of Plaintiff's referral to a spine surgeon and resulting injections with the last note reviewed being from February 2018. (Tr. 671). Dr. Cordas noted Plaintiff's subjective reports of pain and numbness; in the same paragraph, it is stated: "she cannot stand or sit in one position for more than 30 minutes without having to change due to back pain." (Tr. 671). Dr. Cordas examined Plaintiff, finding she had some difficulty getting on and off the table, but Dr. Cordas stated it was unclear how much of that was due

to back pain or was due to obesity. (Tr. 671). Plaintiff was tender to palpation in her lumbar spine, right

paraspinals, and right sacroiliac joint. (Tr. 671-672). Upon neurologic exam, Plaintiff had 5/5 strength,

positive straight leg raise on right for lower extremity sciatica symptoms, and positive Lasegue testing.

(Tr. 672). Impression was lumbar degenerative disc disease and spondylosis causing significant lower

back pain and right lower extremity sciatica, both caused by exacerbation from Plaintiff's March 2017

injury. (Tr. 672). Dr. Cordas found Plaintiff had a "10% impairment of the whole person"[3] and likely

needed medication indefinitely. (Tr. 672). "With regard to work capacity, I do not have the medical

records provided to me of a functional capacity evaluation." (Tr. 673). "Based on my evaluation of the

patient today, I would say she is capable of only light physical duty, lifting no more than 20 pounds

occasionally and 10 pounds frequently with no bending or stooping." (Tr. 673). "[S]he would need to

be able to change between a sitting and a standing position at least every 30 minutes based on her

symptoms of lower back pain and right lower extremity sciatica. This may leave her difficult to employ

in a competitive labor market." (Tr. 673). Dr. Cordas opined the exacerbation of conditions was due

to the March 2017 injury, "to a reasonable degree of medical certainty more likely than not." (Tr. 673).

After discussing the record evidence, the ALJ extensively considered Dr. Cordas' findings,

including Plaintiff's reports, Dr. Cordas' own exam, review of a 2017 MRI, diagnosis, and Dr. Cordas'

opinions. (Tr. 27-29). Later in the ALJ's opinion, the ALJ found Dr. Cordas' opinions to be

unpersuasive (Tr. 31):

> Dr. Cordas does not have a treating history with the claimant, and he based his opinions
> on a review of the medical evidence and an in-person evaluation of the claimant (18F).
> He essentially opined that the claimant only had a 13 percent impairment of the lumbar
> spine, yet, he failed to proffer any opinions on the claimant's exertional, non-exertional,

---

[3] Plaintiff's treating orthopedist opined in April 2019 that Plaintiff only had 4% impairment of lumbar
and opined Plaintiff did not have any permanent physical limitations. (Tr. 27).

psychological or environmental limitations in the context of that impairment other than limiting her to light work, lifting no more than 20 pounds occasionally and 10 pounds frequently, along with changing between standing and sitting every 30 minutes (18F). Additionally, Dr. Cordas did not explain his opinion in the context of the numerous normal examinations cited above, in fact, not mentioning the normal examinations at all. Therefore, as Dr. Cordas failed to provide any opinions on the claimant's exertional, non-exertional, psychological, or environmental limitations in the context of the numerous normal examinations, his opinions are unpersuasive.

(Tr. 31). The ALJ's references to normal exams go towards consideration of the supportability and consistency factors.[4] The ALJ acknowledged that Dr. Cordas did opine functional limitations as to light exertion and as to change of position. However, while the ALJ does condition his statement with "in the context of the numerous normal exams," the ALJ was inaccurate in stating Dr. Cordas did not provide any opinions as to Plaintiff's non-exertional limitations because Dr. Cordas did opine Plaintiff was limited to no bending or stooping based on Dr. Cordas' exam. (Tr. 31, 673). Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands, which includes lifting, carrying, pushing, and pulling. SSR 96-8p, *5. Nonexertional capacity includes posturals like stooping. *Id.*

Plaintiff states that there is no inconsistency between Dr. Cordas' opinions and the opinions of the nonexamining state agency physicians. (ECF No. 22 at 5). However, the non-examining physicians did not opine the same nonexertional limitations as Dr. Cordas and did not opine any need for changing positions. (Tr. 86-87; 673). The functional limitation opinions are different in this regard. The reconsideration opinion by the nonexamining consultant was in July 2019 and would have reviewed similar evidence as Dr. Cordas reviewed. (Tr. 86-87; 673). Plaintiff argues that the law is that all factors

---

[4] The ALJ did not ignore other findings and considered Plaintiff's abnormal findings: antalgic gait and positive straight leg raise in April 2019 (Tr. 21, 555) and in January 2019 (Tr. 26) and several findings of tenderness and spasms (Tr. 19, 24, 26).

must be considered when there are multiple sources with inconsistent opinions. (ECF No. 22 at 6)(citing a public comment and response document to the publication of the C.F.R., not the actual C.F.R.). However, by regulation, the other factors only require articulation when the ALJ finds that there are two or more opinions about the same issue that are both equally well-supported and consistent with the record and the opinions are not exactly the same. 20 C.F.R. § 404.1520c(b)(3). The ALJ did not find that both Dr. Cordas and the non-examining consultants' opinions were both equally well supported and consistent with the record, as the record exams as a whole were not found to be supportive of Dr. Cordas' opinions. Articulation of the other factors was not required here. 20 C.F.R. § 404.1520c(b)(3); (Tr. 31).

The ALJ supported finding Dr. Cordas' opinions as unpersuasive by reviewing the consistency and supportability factors of 20 C.F.R. § 404.1520c(b),(c), citing to treatment notes of exams during the relevant period that did not support the severity of the limitations opined. Under the deferential standard of review applicable here, substantial evidence is not a high threshold. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The ALJ here performed the analysis under the applicable regulatory scheme and considered the factors most important to determining the persuasiveness of the opinions. The ALJ cited to the record to support this finding and followed the applicable regulatory law.

**RFC: Mild CPP**

Plaintiff argues the RFC should have accounted for mild limitations in concentration, persistence, and pace found at an earlier Step.

An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c). In making that assessment, he must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2.

This ruling provides that: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8, *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Additionally, "'a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.'" *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (*quoting Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)).  The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

The ALJ found Plaintiff's depression as non-severe and did not cause more than a minimal limitation in ability to perform basic mental work activities. (Tr. 18). In performing the paragraph B analysis, the ALJ found Plaintiff only had mild limitations in concentration, persistence, and pace. At the conclusion of the paragraph B analysis, the ALJ stated the RFC below reflected the degree of limitations found in the paragraph B analysis. (Tr. 21). In the paragraph B analysis, the ALJ considered Plaintiff's function reports regarding forgetfulness and lack of concentration. The ALJ noted that all mental examinations were normal and Plaintiff never sought specific psychological treatment. (Tr. 18). The ALJ considered Plaintiff's reports of no attention problems and her later reports of lack of concentration. The ALJ considered Plaintiff's pain complaints. The ALJ considered that Plaintiff had generally normal mental and physical exams in 2019 and 2020 and was generally seen for non-severe or temporary illnesses. (Tr. 19-20). The ALJ found the evidence did not indicate more than a minimal

11

limitation in ability to do work activities. (Tr. 21). In the RFC narrative, the ALJ considered Plaintiff's allegations of pain and daily activities. (Tr. 23). Plaintiff reported: "I have no attention problems I am able to focus" but later reported "lack of concentration." (Tr. 24). Plaintiff did not allege any psychological difficulties. (Tr. 24). In the RFC narrative, the ALJ considered Plaintiff stopped taking pain medications in 2017. (Tr. 25). The ALJ noted Plaintiff had some relief from injections and at times reported a pain level of 4. (Tr. 26). Plaintiff's own treating orthopedist found Plaintiff did not have any permanent physical limitations. (Tr. 27). The ALJ again under the RFC narrative noted Plaintiff had generally normal mental exams. (Tr. 27). The ALJ noted records in 2020(a year after the DLI) of depression, but the mental exam was normal on that same date. (Tr. 27). The ALJ found the psychological consultants' opinions persuasive. (Tr. 31). In February 2019, Dr. Ward, Ph.D. found no limitations in any of the paragraph B factors as Plaintiff had exams of no symptoms. (Tr. 69). In June 2019, Dr. Lyman, Ph.D. noted Plaintiff did not allege any worsening of mental condition, depression was stable on medication, and Plaintiff had not been referred for treatment. (Tr. 83-84). "Based on the foregoing, I find the claimant has the above residual functional capacity assessment, which is supported by the objective medical evidence, diagnostic and imaging studies, medical opinions, testimony, and the claimant's subjective allegations." (Tr. 32).

There is no Fourth Circuit Court of Appeals case finding that "mild" limitations in CPP must be explained in the RFC; *Mascio* itself related to "moderate" limitations and "severe" mental impairments. *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). Further, the Court notes that the weight of the authority from other district courts in this Circuit are contrary to the *Ashcraft* case.[5] *See Martin*

---

[5] Plaintiff cites to *Ashcraft v. Colvin*, 2015 WL 9304561 (W.D.N.C. Dec. 21, 2015)(remanding where mild limitation was found in paragraph B analysis and court held it could not meaningfully review the RFC).

*v. Saul*, No. 9:18-CV-3172-JMC, 2020 WL 2813788, at *8 (D.S.C. Jan. 16, 2020) (collecting cases),

*recommendation adopted*, 2020 WL 1329395 (D.S.C. Mar. 23, 2020)(many courts have held that

*Mascio* is inapplicable where a plaintiff is found to have mild limitations in CPP).

The regulations do not require specific articulation about how an ALJ is to have considered non-

severe impairments in the RFC. 20 C.F.R. § 404.1545; *Britt v. Saul*, 860 Fed. Appx. 256, 262 (4th Cir.

2021)(Case law and regulations do not explicitly require a specific analysis on non-severe impairments

in the RFC; the ALJ's opinion must simply reflect the ALJ considered the non-severe impairment.) A

non-severe impairment by its nature did not cause more than a minimal limitation in ability to perform

basic mental work activities. 20 C.F.R. § 404.1522(a).[6]

The Court cannot say that a reasonable mind would not reach this RFC in view of the totality

of the evidence. In formulating the RFC, the ALJ considered Plaintiff's allegations, subjective reports,

objective evidence, and opinions. (Tr. 22-32). The ALJ supported the functional limitations found in

the ALJ's RFC determination with discussion and citation to substantial evidence in the record. Even

where there is conflicting evidence that might have resulted in a contrary decision, our review is limited

to whether substantial evidence supports the ALJ's decision. An RFC is "an administrative assessment

made by the Commissioner based on all the relevant evidence in the case record." *Felton-Miller v.*

*Astrue*, 459 Fed. Appx. 226, 230-31 (4th Cir. 2011) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)).

---

[6] Plaintiff did not present her argument about combination of impairments in her initial brief. (ECF No.
19); (ECF No. 22 at 2). A party waives review of any issues not fully briefed and developed in its
opening brief. *See Canady v. Crestar Mortg. Corp.,* 109 F.3d 969, 973-74 (4th Cir. 1997); *see also*
*United States v. Caldwell*, 7 F.4th 191, 212 n.16 (4th Cir. 2021) ("Any other arguments raised for the
first time in his Reply Brief ... we deem waived."). Nonetheless, it is evident, reading the ALJ's opinion
as a whole, the ALJ considered all of Plaintiff's impairments both severe and non-severe. Plaintiff does
not demonstrate that the ALJ's analysis was not supported by substantial evidence. The ALJ sufficiently
addressed Plaintiff's combined impairments under the *Walker v. Bowen*, 889 F.2d 47 (4th Cir. 1989)
standard and there is substantial evidence to support the ALJ's decision in this regard.

Based upon the foregoing, substantial evidence supports the ALJ's RFC.

**FVRA and Constitutionally Valid SSA proceeding**

Plaintiff argues Commissioner Berryhill lacked the authority under the FVRA to continue acting as Commissioner and could not have appropriately appointed the ALJ who decided Plaintiff's case. The essential question of this issue is: if an acting official's 210-day period of service expires, and the President nominates another for the office, does the Federal Vacancy Reform Act (FVRA) allow the acting official(Berryhill) to resume another period of acting service while the nomination(Saul) is pending? The answer is yes.

Plaintiff argues[7] that the former Commissioner Berryhill lacked authority under the FVRA to ratify the appointment of ALJs in 2018. (ECF No. 19 at 22). Plaintiff argues that if ALJ Peace was not properly appointed,[8] then the ALJ lacked authority to decide Plaintiff's disability in 2021. Plaintiff seeks a remand for a hearing before a "properly appointed" ALJ. Defendant asserts Berryhill was validly serving when she approved the appointment of ALJ Peace. (ECF No. 20 at 17-30).

The FVRA is found at 5 U.S.C. § 3345.[9] The FVRA provides three avenues for designation of an acting official: by default, § 3345(a)(1) subject to limitations within § 3346; another senate-confirmed official by presidential designation, § 3345(a)(2); or an employee within the same agency

---

[7] There was likely no requirement for Plaintiff to raise and exhaust this issue below. *See e.g. Carr v. Saul*, 124 S. Ct. 1352 (2021)(no issue-exhaustion requirement on Appointments Clause claims).

[8] After concerns due to *Lucia v. SEC*, 138 S. Ct. 2044 (2018), Berryhill issued an agency-wide ratification and reappointment of ALJs. *See* SSR 19-1p.

[9] However, there are also vacancy statutes specific to agencies. 42 U.S.C. § 902(b)(4)("The Deputy Commissioner shall be Acting Commissioner of the Administration during the absence or disability of the Commissioner and, unless the President designates another officer of the Government as Acting Commissioner, in the event of a vacancy in the office of the Commissioner."). Procedurally distinct, current Acting Commissioner Kijakazi is serving under position-specific authority in accordance with § 3347(a)(1) because she was designated under 41 U.S.C. § 902(b)(4). The time limits under the FVRA only apply to those serving pursuant to § 3345, not §3347.

that satisfies tenure and salary requirements, § 3345(a)(3).

As for the running of § 3346 time limits, the 210 days in § 3346(a)(1) ended in November 2017.[10] On April 17, 2018, President Trump nominated Saul to be the Commissioner. Defendant argues while Saul's nomination was pending, Berryhill properly resumed service under § 3346(a)(2). The plain language[11] of § 3346(a)(2) allows Berryhill under the FVRA to serve during the pendency of the nomination of Saul even when that nomination is after the initial 210-day period. There is no statutory requirement in the FVRA that the nomination(Saul) is required to be during the initial 210 days of the acting official(Berryhill).

The outlier case upon which Plaintiff relies, *Brian T. D. v. Kijakazi*, No. 19-CV-2542 (DTS), 2022 WL 179540, at *16 (D. Minn. Jan. 20, 2022) was recently reversed by the Eighth Circuit Court of Appeals, *Dahle v. Kijakazi*, 62 F.4th 424 (8th Cir. 2023), which found Berryhill was properly serving as Acting Commissioner when she ratified the appointment of ALJs including the one who issued the decision in that case. Further, the Fourth Circuit Court of Appeals in April 2023 issued a published opinion on this issue, finding: "An

---

[10] November 16, 2017 is 300 days from January 21, 2017; although that is 90 days more than the 210-day period, that 90-day extension is provided in 5 U.S.C. § 3349a(b) for circumstances where a vacancy arises at the beginning of a new President's term.

[11] (a) Except in the case of a vacancy caused by sickness, the person serving as an acting officer as described under section 3345 may serve in the office--

(1) for no longer than 210 days beginning on the date the vacancy occurs; **or**

(2) subject to subsection (b), once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate.

(b)(1) If the first nomination for the office is rejected by the Senate, withdrawn, or returned to the President by the Senate, the person may continue to serve as the acting officer for no more than 210 days after the date of such rejection, withdrawal, or return.

(2) Notwithstanding paragraph (1), if a second nomination for the office is submitted to the Senate after the rejection, withdrawal, or return of the first nomination, the person serving as the acting officer may continue to serve-

(A) until the second nomination is confirmed; or

(B) for no more than 210 days after the second nomination is rejected, withdrawn, or returned.

(c) If a vacancy occurs during an adjournment of the Congress sine die, the 210-day period under subsection (a) shall begin on the date that the Senate first reconvenes.

acting officer may serve while a nomination is pending in accordance with § 3346(a)(2) regardless of whether her service under § 3346(a)(1) expired before the nomination was submitted. Berryhill therefore was properly serving as SSA Acting Commissioner when she ratified the ALJs' appointments." *Rush v. Kijakazi*,– F.4th– , 2023 WL 2877081, at *7 (4th Cir. Apr. 11, 2023)(published). There is no error here as to Plaintiff's arguments as to the authority of ALJ Peace.

### III.  CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. *Richardson*, 402 U.S. at 390.  Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock*, 483 F.2d at 775.  The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).  As previously discussed, despite the Plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence.  Based upon the foregoing, and pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is AFFIRMED.

<table>
<tr><td></td><td>s/ Thomas E. Rogers, III</td></tr>
<tr><td>April 26, 2023</td><td>Thomas E. Rogers, III</td></tr>
<tr><td>Florence, South Carolina</td><td>United States Magistrate Judge</td></tr>
</table>

16